IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| DAMIEN BURDETTE, | : | |
| | : | |
| Plaintiff, | : | Civil Action Number: |
| | : | |
| vs. | : | |
| | : | 3:17-cv-00058-CDL |
| MAURICE'S TOWING, LLC, and | : | |
| MAURICE BENNETT, | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

## JOINT MOTION TO APPROVE SETTLEMENT AND TO DISMISS ACTION WITH PREJUDICE

---

Plaintiff Damien Burdette and Defendants Maurice's Towing, LLC and Maurice Bennett ("Defendants") (collectively "the Parties"), respectfully seek the Court's approval of their FLSA settlement (the "Settlement") with respect to Plaintiff's claims in this wage and hour case against Defendants.

### 1.  INTRODUCTION

The Parties reached the Settlement after months of investigation and arms-length negotiations. The Settlement, if approved, will provide meaningful relief to those affected.  Accordingly, Plaintiff and Defendants jointly request that the Court enter the Order Approving Settlement and Dismissing the Action with Prejudice. In support of this Motion, the Parties jointly state as follows:

## 2.    BACKGROUND

On March 24, 2017, Plaintiff filed this action asserting claims under the Fair Labor Standards Act. [Dkt. 1] Plaintiff alleged he was misclassified as an independent contractor and, thus, Defendants failed to pay him the appropriate overtime premium. *Id*.  Defendants denied the allegations. [Dkt. 9] Defendants informally provided extensive payroll and timekeeping records that allowed Burdette to make a reasonably accurate estimate of his unpaid wages. After a series of negotiations, the Parties have resolved their differences and now seek approval from this Court to avoid the risks, distractions, and costs that will result from further litigation. The executed Settlement Agreement and Release of Claims (the "Agreement") is attached hereto as Exhibit A.

### ARGUMENT AND CITATIONS OF AUTHORITY

In the context of a private lawsuit brought by an employee against an employer under the FLSA, an employee may settle and release FLSA claims against an employer if the Parties present the district court with a proposed settlement and the district court enters a stipulated judgment approving the fairness of the settlement. As the Eleventh Circuit explained in *Lynn's Food Stores, Inc. v. United States*[1]:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employee provides some

---

[1] 679 F.2d 1350, 1353 (11th Cir. 1982)

assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the Parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching, if a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354.

## A.    Standards for Approval of an FLSA Compromise

*Lynn's Food Stores* requires that the Court to review a proposed compromise of FLSA claims for "fairness."  However, the criteria the Court are to consider in determining "fairness" is not as clear.  As the court in *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1240-1 (M.D. Fla. 2010) noted:

> *Lynn's Food* requires the Parties to an FLSA compromise to present proposed agreement to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness." [*Lynn's Foods*,] 679 F.2d at 1353.  Although noting the unfairness of the settlements at issue, *Lynn's Food* specifies no criteria for evaluating the "fairness" of a proposed compromise in a different case.

### *(1)    Initial Considerations from Dees*

The Parties should provide the Court with "enough information for the court to examine the bona fides of the dispute" including the nature of the dispute, the material facts and claims, and an estimate of hours worked or compensation owed

in order to understand the nature of the compromise. [2]  Further, an employee may not prospectively waive his FLSA rights as a part of a compromise.[3] In addition, the Court should address the attorneys' fees agreed upon to insure that the fees agreed upon did not adversely affect the Plaintiff's recovery. [4]

The *Dees* Court continued:

> *Bonetti v. Embarq Management Co.,* [715 *F. Supp. 2d* 1222 (M. D. Fla. 2009)], describes the problem faced by a district court:

> Short of a bench trial, the Court is generally not in as good a position as the Parties to determine the reasonableness of an FLSA settlement. Many factors may be in play as the Parties negotiate a compromise that is acceptable to both sides. The Parties may disagree as to the number of hours worked by the plaintiff, the plaintiff's status as an exempt employee, or the defendant's status as a covered employer. In certain cases, the Defendant may assert (or threaten to assert) a counterclaim arising from the employment relationship. If the Parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable. Rarely will the Court be in a position to competently declare that such a settlement is "unreasonable."[5]

---

[2]  *Dees v. Hydradry, Inc.,* 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010)

[3] *Dees v. Hydradry, Inc.,* 706 F. Supp. 2d 1227, 1243 (M.D. Fla. 2010)

[4] *Dees v. Hydradry, Inc.,* 706 F. Supp. 2d 1227, 1243 (M.D. Fla. 2010)(quoting Bonetti, 715 F. Supp. 2d 1222 (MDF) 2009)(Noting that the Court would not separately consider the reasonableness of the fee to be paid to counsel unless there was some indication that settlement amount or process was problematic.)

[5] *Dees,* 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010)(quoting *Bonetti*)

Further from the *Dees* Court:

> Nevertheless, the district court must "scrutinize the settlement for fairness." To fully implement the policy embodied by the FLSA, the district should scrutinize the compromise in two steps. First, the court should consider whether the compromise is fair and reasonable to the employee (***factors "internal" to the compromise***). If the compromise is reasonable to the employee, the court should inquire whether the compromise otherwise impermissibly frustrates implementation of the FLSA (***factors "external" to the compromise***). The court should approve the compromise only if the compromise is reasonable to the employee and furthers implementation of the FLSA in the workplace.[6]

### (2) The Internal Factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery amounts; and (6) the opinions of the counsel.[7]

### (3)    The External Factors:

> Compromise of a retrospective dispute may be permissible if, for example, the FLSA issue in a case is unresolvably close on

---

[6] *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010)(emphasis added)

[7] *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Pessoa v. Countrywide Home Loans, Inc.*, 2007 U.S. Dist. LEXIS 24076, 2007 WL 1017577, at 3 (M.D. Fla. Apr. 2, 2007) (quoting *Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)).

the facts or the law or some extraordinary circumstance (say, a suddenly disabled claimant or an employer in liquidation) commends a speedy or certain resolution. On the other hand, several factors may commend rejecting a proposed compromise, including the presence of other employees situated similarly to the claimant, a likelihood that the claimant's circumstance will recur, a history of FLSA non-compliance by the same employer or others in the same industry or geographic region, or the requirement for a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace. In all instances, the district court should faithfully execute the congressional mandate for "minimum wages, promptly paid . . . for the lowest paid segment of the nation's workers.[8]

### 3.   THIS FLSA COMPROMISE SHOULD BE APPROVED AS FAIR

#### A. Initial Considerations

Burdette drove a tow truck for Defendants from May of 2016 until December of 2016. With the caveat that the Defendants many not agree with these allegations, Burdette was paid on a commission basis and the Defendants did not track his time. Burdette alleges that he was misclassified as an independent contractor instead of an employee and, therefore, Defendants failed to pay him minimum

---

[8] *Dees v. Hydradry, Inc*., 706 F. Supp. 2d 1227, 1244 (M.D. Fla. 2010)(*quoting D.A. Schulte v. Gangi*, 328 U.S. 108, 116, 66 S. Ct. 925, 90 L. Ed. 1114 (1946)).

wage and overtime as required by the FLSA. As noted above, the Parties exchanged records from Defendants' customers and used Burdette's estimate of the number of hours he worked. Plaintiff's counsel prepared an estimate of damages using Microsoft Excel. Beyond the overtime he was not paid, Burdette's calculations show that he was not paid the minimum wage for most weeks. Burdette's estimate is that he is owed $6,882.70 for unpaid minimum and overtime wages that could be doubled as liquidated damages to $13,765.40.  The compromise calls for Mr. Burdette to receive--in gross--$12,388.66. As noted above, neither Party had complete time records and the amount of time Plaintiff worked was contested. This agreement calls for the Plaintiff to receive only a small amount less than his highest estimate of damages—certainly an amount within the range of the evidence. In compromise, Plaintiff will receive his funds over the course of thirty months. This payment schedule is reasonable because Defendant has stated that he has financial issues that require such a schedule.

As to Attorneys' fees and costs, the Parties first agreed upon Mr. Burdette's portion of the settlement and then negotiated attorneys' fees. Counsel will receive attorneys' fees from the Defendant of $9,853.14. Pursuant to the retainer agreement[9] between counsel and Plaintiffs, counsel will also receive twenty-five

---

[9] See *Moore v. Americus Restaurant Group, Inc*., 1:17-cv-107(WLS), Dkt. 21 (M.D. Ga. October 6, 2017) (The Court discussed the 25% arrangement in approving an attorneys' fee award noting that the "[F]ee agreement to advance costs provided that Plaintiff may

percent of the liquidated damages paid to Plaintiffs ($1,548.61) for a total

attorneys' fee award of $11,399.75 Plaintiff was afforded the option of paying a

cost retainer or paying 25% of liquidated damages in return for counsel's

agreement to fund costs without recourse. Defendants are not a party to this

contractual arrangement. Plaintiff opted to have counsel advance costs. Plaintiffs'

counsel has accrued approximately $14,330 in fees and costs for the claims they

pursued for Plaintiff at rates that have been previously approved in the Northern

District of Georgia. [10] Plaintiff's counsel is willing to reduce his fee in this matter

in order to resolve the matter.

### B. Internal Factors

As noted above, *Dees* lists a number of internal factors: (1) The existence of

fraud or collusion behind the settlement; (2) the complexity, expense, and likely

duration of the litigation; (3) the stage of the proceedings and the amount of

---

choose to personally bear the costs of litigation or have the firm hold him harmless in the
event of no recovery for a fee of 25% of liquidated damages. Plaintiff chose the latter.")

[10] See *Forester v. Mdpons*, et.al., Northern District of Georgia, civil action 1:15-cv-
03378-ELR (Dkt.47, p.11); *Obertein, etal. v. Assured & Associates*, et.al., Civil Action
No. 1:14-cv-00490-AT, Dkt. 100  (05/04/17); *Miller v. Rockdale County*, 1:16-cv-04149-
WSD (Dkt. 12, p.4) ("The Court also finds the amount of attorneys' fees and costs to be
paid by Defendant to Plaintiff's counsel is reasonable in view of the results obtained and
the customary fee for similar legal services provided in the Atlanta market. . . . . The
Court notes that multiple courts have approved the requested hourly rates of $400 per
hour for attorneys Mitchell D. Benjamin and Charles R. Bridgers, as well as the rates of
$145 per hour for paralegal Jessica Sorrenti and $105 per hour for paralegal Sarah
Toenes, as detailed in the declarations of counsel."

discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery amounts; and (6) the opinions of the counsel. [11]

Here, both Parties were represented by experienced counsel in an adversarial process that demonstrates no evidence of fraud of collusion. As with litigation where fee shifting is required, both Parties were cognizant that litigation can be time consuming and very expensive. If settlement was not reached at this time, numerous depositions would have needed to be taken, dispositive motions would likely have been filed, and significant delay in resolution of this dispute would ensue.

The Parties disagree as to the merits of this case. Plaintiff and counsel believe that disputed issues of fact likely would permit this case to go to trial and that Plaintiff's testimony and other evidence of liability will be credited by a jury. Defendants disagree and contend that they would prevail at summary judgment or at trial.  Thus, substantial uncertainties and risks existed for all Parties and was a significant catalyst to serious settlement negotiations.

Beyond this, the Parties had access to virtually all of the time, pay, and external records that were ever going to be available while making their estimates of damages.  This resolution is certainly within the range of the evidence. Therefore,

---

[11] *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Pessoa v. Countrywide Home Loans, Inc.*, 2007 U.S. Dist. LEXIS 24076, 2007 WL 1017577, at 3 (M.D. Fla. Apr. 2, 2007) (quoting *Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)).

any further litigation or discovery would not provide Plaintiff with any certain additional benefit because the settlement provides for almost all the damages that Plaintiff could have proven at trial. In sum, the Parties and their counsel prudently attempted to devote their limited resources towards settlement, rather than continued litigation.

### C.    External Factors

As stated above, the Dees Court noted the following external factors:

> Compromise of a retrospective dispute may be permissible if, for example, the FLSA issue in a case is unresolvably close on the facts or the law or some extraordinary circumstance . . . commends a speedy or certain resolution. On the other hand, several factors may commend rejecting a proposed compromise, including the presence of other employees situated similarly to the claimant, a likelihood that the claimant's circumstance will recur, a history of FLSA non-compliance by the same employer or others in the same industry or geographic region, or the requirement for a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.[12]

Other "external factors" to examine when considering the fairness of a proposed FLSA settlement, address whether the compromise frustrates the purposes of the

---

[12] *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1244 (M.D. Fla. 2010)(*quoting D.A. Schulte v. Gangi*, 328 U.S. 108, 116, 66 S. Ct. 925, 90 L. Ed. 1114 (1946)).

FLSA. *Dees*, 706 F. Supp. 2d at 1244. Here, the purpose of the FLSA is not frustrated in that Mr. Burdette is receiving almost full value for this claims after a detailed review of those claims.  Given this fact, a detailed analysis of the external factors is not overly necessary.

## 4.   CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court approve the compromise entered into between the Parties. The Parties also request that the Court dismiss this action with prejudice, but retain jurisdiction to enforce the Parties Settlement Agreement, if necessary. A proposed order is attached hereto for the Court's consideration.

Respectfully submitted.

DELONG CALDWELL BRIDGERS
FITZPATRICK & BENJAMIN, LLC

3100 Centennial Tower
101 Marietta Street
Atlanta, Georgia 30303
Telephone (404) 979-3150
Facsimile (404) 979-3170
charlesbridgers@dcbflegal.com
kevin.fitzpatrick@dcbflegal.com

*s/ Charles R. Bridgers*
Charles R. Bridgers
Georgia Bar No. 080791
Kevin D. Fitzpatrick, Jr.
Georgia Bar No. 262375

Counsel for Defendants:

                             THE PORTO LAW FIRM

                             *s/ Nicholas J. Porto*

1600 Baltimore, Suite 200A      Nicholas J. Porto
Kansas City, Missouri 64108     Georgia Bar No. 56938
Telephone (816) 463-2311
Facsimile (816) 463-9567
nporto@portolaw.com

12

# EXHIBIT A



## SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement") is entered into as of the 27 day of October, 2017 (the "Effective Date") by the Parties.

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Definitions:**  As used herein, the following terms shall have the following meanings:

   a.     "Agreement" shall mean this settlement agreement, and all attachments, exhibits, modifications and amendments.

   b.     "Burdette" means Plaintiff Damien Burdette, an individual resident of the State of Georgia.

   c.     "Defendants" mean Maurice's Towing, LLC, a Georgia Limited Liability Company, and Maurice Bennett, an individual resident of the State of Georgia.

   d.     "Lawsuit" means the action currently pending in the United States District Court Middle District of Georgia, Case No. 3:17-cv-00058-CDL, *Damien Burdette vs. Maurice's Towing, LLC and Maurice Bennett.*

   e.     "Parties" means Damien Burdette, Maurice's Towing, LLC, and Maurice Burdette.

   f.     "Plaintiff" means Damien Burdette.

2. **Recitals of Fact:**

   a.     Plaintiff filed the Lawsuit asserting, among other things, claims against the Defendants alleging violation of the Fair Labor Standards Act ("FLSA").

   b.     The claims by the Plaintiff against the Defendants are for monetary damages and for their attorney's fees incurred herein.  The Parties have reached agreement to settle in compromise the claims made by the Plaintiff.

   c.     The Lawsuit will be dismissed with prejudice upon payment of all sums due hereunder. The Parties will ask the Court to administratively close the matter retaining jurisdiction to enforce the terms after the Court approves the settlement.

d.      The Lawsuit has been and is settled on a "no admission" basis, meaning that no Party admits any fault or liability of any kind, nature or description whatsoever to any other Party.  The Lawsuit has been settled because of the risks, costs and uncertainty of proceeding with litigation in the Lawsuit and the possibility that appeals would follow after the trial in the Lawsuit.

e.      All Parties are represented by counsel in connection with the disputes described above and in connection with the preparation and negotiation of this Agreement.  The Parties have settled all of their claims, disputes and controversies which exist and which have arisen prior to the Effective Date and have, therefore, entered into this Agreement, which constitutes a complete and comprehensive settlement agreement between and among the Parties hereto with respect to all disputes, matters, facts, and circumstances which have occurred or arisen prior to the Effective Date.

3.   **General Settlement Terms:**

a.      The Defendants have agreed to pay TWENTY TWO THOUSAND TWO HUNDRED FORTY DOLLARS AND NO CENTS ($22,240.00) (the "Settlement Amount") to Plaintiff and Plaintiff's attorneys Charles R. Bridgers, Attorney, LLC  The Settlement Amount represents a compromised payment of all of Plaintiff's damages and attorney's fees as alleged in the Lawsuit.  The Settlement Amount shall be paid as follows:

1.      The amount of TWO THOUSAND DOLLARS AND NO CENTS ($2,000.00) shall be paid to Plaintiff and Plaintiff's Attorneys within ten (10) days of all parties execution of this Agreement and the Court's approval of the settlement.

2.      The balance of TWENTY THOUSAND TWO HUNDRED AND FORTY DOLLARS AND NO CENTS ($20,240.00) shall be payable in thirty (30) equal monthly payments of SIX HUNDRED SEVENTY FOUR DOLLARS AND SIXTY SIX CENTS ($674.66) beginning on the 15th day of the first full month following all parties execution of this Agreement and the Court's approval of the settlement.  Such monthly payments shall be postmarked on or before the 15th of such month and jointly issued to Plaintiff and Plaintiff's attorneys and mailed to DELONG CALDWELL BRIDGERS FITZPATRICK & BENJAMIN, LLC c/o Charles Bridgers, 3100 Centennial Tower, 101 Marietta Street, Atlanta, Georgia 30303.

3.      Defendant shall be responsible for any required tax reporting obligations.

b.      Defendants shall pay their own court costs and attorney's fees in connection with the Lawsuit and in connection with the negotiation and preparation of this Agreement.

W:\W_and_H_Project\Burdette_Damien_Maurice's Towing-B2\Settlement\10.26.17 Release and Settlement Agreement-Final.docx

c.      Plaintiff's Counsel has executed this Agreement to evidence Plaintiffs' Counsel's approval of this Agreement as to the form and as counsel for the Plaintiff.  The attorney's fees described and referred to herein are the entirety of the attorney's fees that the Plaintiff shall be entitled to recover from and be paid by the Defendants.

4.   **Releases:**

   **Mutual Waiver and Release of Claims.**  The Parties, on behalf of themselves, their dependents, heirs, executors, administrators, assigns, successors, or other representatives, hereby fully, finally and forever release and discharge each other and all past and present parents, subsidiaries, affiliates, predecessors, successors, assigns, representatives, partners, members, officers, directors, insurers, agents and employees from any and all claims and rights of any kind that they may have, whether now known or unknown, suspected or unsuspected, including, but not limited to, any claims arising out of or in any way connected with Burdette's alleged employment with Defendants as of the date this Agreement is executed. The Parties represent that they know of no claim that has not been released by this paragraph, and that the release in this paragraph is intended to release Burdette and Defendants from liability for any and all possible claims by the Parties, known or unknown, that exist or may exist as of the date of this Agreement.

5.   **Confidentiality:**  The Parties agree that they shall not reveal or disclose the terms of this Agreement or the substantive provisions herein to any third party without the prior written consent of the other Parties, except as provided for herein.  The Parties agree and covenant to keep the provisions and terms of the settlement of the matters described herein confidential in all respects. The Parties may disclose the terms of this Agreement to their attorneys, accountants and similar professionals who require such information, but only after informing such attorneys, accountants and professionals of the confidential nature hereof and after instructing such professionals to maintain the confidential nature of this Agreement.  The Parties may also disclose the terms of this Agreement to the IRS, to state taxing agencies, or if required to do so by law or legal process in any action or proceeding to enforce the terms of this Agreement relating to the enforceability of this Agreement.  If asked, the Parties may respond that the matter has been resolved.

6.   **Non-Disparagement / Letters of Reference**:  Defendants will not disparage Plaintiff or do anything which would cause him to lose any employment opportunity(ies).  If any subsequent employers inquire about Plaintiff's previous employment with Defendants, Defendants shall report a neutral employment reference without mention of the fact of this lawsuit or its settlement.

7.   **No Admission:**  By executing, entering into, and performing their obligations hereunder no Party admits any liability to any other Party arising out of any matters addressed herein or any other acts or omissions which are alleged to have occurred.  The disputes between and among the Parties have been settled by the parties as a result of good faith negotiations, under threat of litigation and in view of the uncertainty associated with proceeding with litigation.  There is no

admission, express or implied, by any Party on any matter stated herein. The Parties further agree that all of the terms hereof are contractual and not mere recitals.

8. **Enforcement Costs:** If any action is brought to enforce the terms or provisions of this Agreement or to defend against a claim of breach of the terms or provisions of this Agreement, then the prevailing Party in such action shall be entitled to recover from the other Party all of the prevailing Party's attorney's fees, costs and expenses.

9. **Remedies in the Event of Breach.** In the event of a breach by Defendant of its payment obligations under this Settlement Agreement that is not cured after ten (10) days written notice sent certified mail to Maurice Bennett, 5991 Atlanta Highway, Rutledge, Georgia 30650, , the entire outstanding principal balance shall immediately become due and payable. Interest shall accrue on the outstanding balance at the statutory rate.

10. **Miscellaneous:**

   a.    This Agreement shall be governed and construed in accordance with the laws of the State of Georgia.

   b.    This Agreement is binding upon the parties and their successors, assigns, heirs and personal representatives.

   c.    This Agreement may be amended only be a written instrument signed by all Parties.

   d.    This Agreement is for the benefit of the Parties. There are no third party beneficiaries or intended third party beneficiaries of this Agreement.

   e.    The section and paragraph headings contained herein are for convenience only and shall not be resorted to for purposes of construing or interpreting this Agreement.

   f.    This Agreement supersedes all prior and contemporaneous agreements, both verbal and written, entered into by and between the Parties concerning the subject matter hereof.

   g.    It is understood, by and between the parties hereto, that neither party has relied upon any representation, either express or implied, made by any of the released parties herein, or their representatives, as to the tax consequences of this Agreement, and that both parties expressly release all of said released parties, including their assigns and attorneys, from any and all liability in connection with any such tax consequences.

   h.    Both parties further represent that they have relied upon the advice of their attorneys of record, the attorneys of their own choice, concerning the legal and tax consequences of this Agreement; and that the terms and provisions herein are fully understood and

voluntarily accepted.  And further, Plaintiff understands that this Agreement is in full and final compromise of any and all claims and causes of action referred to in The Lawsuit.

i.This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement, which shall be binding upon and effective as to all Parties. The exchange of copies of this Agreement and of signature pages by facsimile transmission or by electronic mail as a .pdf file shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes.

j.Each provision of this Agreement shall be considered separable, distinct and severable from the other and remaining provisions, and any breach, invalidity or unenforceability of any provision shall not impair the operation, validity or enforceability of those provisions that are valid and, to the extent allowed by law, such invalid or otherwise unenforceable provision may be modified by a court of competent jurisdiction so as to render it enforceable.  Specifically, if the trial court rejects any provision for confidentiality or liquidated damages, Defendant agrees that this Settlement Agreement may be immediately approved by the District Court.

        IN WITNESS WHEREOF, the Parties hereto have executed this Agreement to be effective as of the Effective Date.


_____
DAMIEN BURDETTE
PLAINTIFF

_____
Printed Name      *DAMIEN Burdette*

_____
Date      *Oct 27 2017*


STATE OF _*Georgia*_ )
                                          )
COUNTY OF _*Fulton*_ )


        SUBSCRIBED AND SWORN to before me by _*Damien Burdette*_

        this the _27_ day of _October_, ~~2016~~ *2017*

W:\W_and_H_Project\Burdette_Damien_Maurice's Towing-B2\Settlement\10.26.17 Release and Settlement Agreement-Final.docx

My Commission Expires: _____4-17-19_____.

NOTARY PUBLIC, STATE OF _Georgia_.

MAURICE'S TOWING, LLC
DEFENDANT

_____Maur O_____
Authorized Representative

_____Maurice Bennett_____
Printed Name

_____11-28-17_____
Date

STATE OF _Georgia_ )

COUNTY OF _Morgan_ )

SUBSCRIBED AND SWORN to before me by _____Cyndi M Stegall_____

this the 28 day of November 2017.

My Commission Expires: _____8-9-2021_____.

NOTARY PUBLIC, STATE OF _Georgia_

_(signature)_

**MAURICE BENNETT**
**DEFENDANT**

Maurice Bennett
Printed Name

11-28-17
Date

STATE OF _Georgia_ )

COUNTY OF _Morgan_ )

SUBSCRIBED AND SWORN to before me by _Cyndi M Stegall_.

this the _28_ day of _November_ 2017.

My Commission Expires: _8-9-2021_.

NOTARY PUBLIC, STATE OF _Georgia_

_Charl R Bridge_                          _TB  10-27-17_
Charles Bridgers                          DATED
DELONG CALDWELL BRIDGERS
FITZPATRIC & BENJAMIN
3100 Centennial Tower
Atlanta, Georgia 30303
ATTORNEY FOR PLAINTIFF


Nicholas Porto, Esq.                      DATED
THE PORTO LAW FIRM
1600 Baltimore, Suite 20A
Kansas City, MO 64108
ATTORNEY FOR DEFENDANTS